## Thomas M. Kiley, petitioner.

Suffolk. February 10, 2011. - May 3, 2011.

Present: Ireland, C.J., Spina, Cowin, Cordy, Botsford, Gants, & Duffly, JJ.[1]

*Attorney at Law,* Withdrawal. *Rules of Professional Conduct.*

In the circumstances of a civil action in which a law firm attorney filed an appearance on behalf of the plaintiff, but subsequently moved to withdraw on grounds that she was temporarily leaving the practice of law, and the plaintiff was unable to find successor counsel and discovery was behind schedule, the judge did not abuse his discretion in allowing the law firm attorney's motion to withdraw but requiring her law firm to continue the representation and file an appearance, where, given that the plaintiff entered into a contingent fee representation agreement with the law firm rather than with a sole practitioner, the law firm could not terminate the agreement simply because the attorney who had been handling the case had died, left the practice of law, or moved to a different firm [647-652]; however, the judge erred in requiring an individual partner of the firm who had signed, on behalf of the firm, the representation agreement with the plaintiff to himself file an appearance, given that the judge's order rested on the erroneous finding that the partner signed the agreement both as an individual and on behalf of the firm [652-653].

Statement that a law firm, after agreeing to represent a client for a contingent fee and filing a complaint that presumably complies with the requirement of a good faith basis under Mass. R. Civ. P. 11 (a), may not withdraw from a case simply because it recognizes belatedly that the case will not be profitable for the firm. [653-654]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on July 16, 2010.

The case was reported by *Spina,* J.

*Carmen A. Frattaroli* for the petitioner.

*Laurence M. Johnson & Samuel B. Moskowitz,* pro se, amici curiae, submitted a brief.

*Elizabeth N. Mulvey, Michael E. Mone, Neil Sugarman & Clyde D. Bergstresser,* pro se, amici curiae, submitted a brief.

[1]Justice Cowin participated in the deliberation on this case prior to her retirement.

GANTS, J. The issue raised on appeal is whether a judge abused his discretion by ordering the named partner of a law firm to enter an appearance on behalf of a plaintiff in a civil case where the plaintiff had entered into a contingent fee agreement with the law firm, the law firm attorney who had filed an appearance on behalf of the plaintiff decided to leave the practice of law temporarily, the client could not find successor counsel, and discovery was behind schedule. We conclude that, in these circumstances, the judge did not abuse his discretion in ordering another attorney from the law firm to file an appearance, but the judge may not specify the attorney.

*Background.* On November 1, 2006, Michael A. McGibbon (McGibbon or client) entered into a contingent fee agreement with the law firm of Thomas M. Kiley & Associates, LLP (Kiley firm), in which the Kiley firm agreed to perform legal services to prosecute McGibbon's medical malpractice claims against a physician in return for a percentage of the amount, if any, collected on the claims.[2] The agreement was signed by Thomas M. Kiley (Kiley) and the client. On November 26, 2007, Pamela A. Swift, an attorney in the Kiley firm, filed suit against the physician and entered an appearance on behalf of the client in the Superior Court.[3]

On February 9, 2010, Swift confirmed in writing a telephone conversation she had with McGibbon in which she informed him that she was taking a "[s]abbatical from the practice of law," and would no longer be affiliated with the Kiley firm after February 11. Swift declared in her letter that, because of her departure from the Kiley firm, "it will be necessary for you to seek successor counsel." The client attempted without success to obtain new counsel. On March 15, Swift moved to withdraw as counsel of record for McGibbon. After a hearing on April 6, the judge denied Swift's motion without prejudice,

---

[2]This was the second agreement that Michael A. McGibbon had entered into with Thomas M. Kiley & Associates, LLP (Kiley firm). In the first, executed on November 29, 2005, the Kiley firm, in return for a contingent fee, agreed to perform legal services to prosecute McGibbon's motor vehicle injury claim.

[3]Pamela A. Swift also had entered an appearance on behalf of a coplaintiff, Patricia McGibbon, whose claims were dismissed by stipulation on May 11, 2010.

"there being no appearance by successor counsel accompanying this motion." On May 25, Swift moved for reconsideration, attesting in an affidavit that "[t]here has been a deterioration of the attorney/client relationship in that there are irreconcilable differences between [McGibbon] and myself and irreconcilable differences as to the strategy and/or tactics respective to this claim." On May 28, after a hearing attended by Swift, McGibbon, and defense counsel, the judge allowed Swift's motion to withdraw as counsel of record, and ordered that Kiley, McGibbon, and defense counsel appear at a status conference on June 15.

On June 16, 2010, the judge issued his "findings and order" in which he found that McGibbon had a valid contingent fee agreement with the Kiley firm and with Kiley himself, and that McGibbon wanted Kiley to continue to represent him. The judge also found that the case was "falling behind in terms of its compliance with court ordered time standards." The judge ordered Kiley to file his appearance on behalf of McGibbon and ordered the parties "forthwith" to complete all outstanding discovery.

On June 21, 2010, Kiley wrote a letter to McGibbon advising him that their agreement had been orally terminated on February 8, 2010, that the oral termination had been confirmed in Swift's letter of February 9, and that, if the agreement had not then been terminated, he was "unilaterally terminating this contract effective immediately." On June 28, 2010, Kiley moved to vacate or reconsider the judge's findings and order. The judge denied the motion.

On July 16, 2010, Kiley petitioned a single justice of the Appeals Court for interlocutory relief under G. L. c. 231, § 118, first par., which petition was denied. He then filed a petition for interlocutory relief with a single justice of this court under G. L. c. 211, § 3. The single justice reserved and reported the matter to the full court.[4]

*Discussion.* An attorney who has entered an appearance in a case filed in court may not withdraw from the representation of

---

[4]We acknowledge amicus briefs filed by Laurence M. Johnson and Samuel B. Moskowitz, and by Elizabeth N. Mulvey, Michael E. Mone, Neil Sugarman, and Clyde D. Bergstresser.

the client without complying with two rules: Mass. R. Prof. C. 1.16, 426 Mass. 1369 (1998), which identifies the limited circumstances under which an attorney must or may withdraw; and Mass. R. Civ. P. 11 (c), 365 Mass. 753 (1974), which identifies the limited circumstances where withdrawal may be done without leave of court and otherwise requires leave of court.

Under rule 1.16 (a), an attorney "shall" withdraw from representation where the client discharges the lawyer, where continued representation will result in violation of the rules of professional conduct or other law, or where the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client. Under rule 1.16 (b), a lawyer "may" withdraw from representation where the withdrawal can be accomplished "without material adverse effect on the interests of the client." Where withdrawal will have a material adverse effect on the client's interests, a lawyer may withdraw only if at least one of the following circumstances is present:

> "(1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

> "(2) the client has used the lawyer's services to perpetrate a crime or fraud;

> "(3) a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;

> "(4) the client fails substantially to fulfil an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

> "(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

> "(6) other good cause for withdrawal exists."

Mass. R. Prof. C. 1.16 (b). Regardless whether a lawyer must or may withdraw in these circumstances, where the lawyer has entered an appearance on behalf of the client and "the rules of

a tribunal" require approval of the withdrawal by the tribunal, the lawyer shall not withdraw the appearance without the tribunal's permission. Mass. R. Prof. C. 1.16 (c).

Where an attorney has entered an appearance in a civil proceeding in a Massachusetts court, the "rules of [the] tribunal" require the attorney to obtain leave of court before withdrawing from a case unless three conditions are met: the notice of withdrawal is accompanied by the entry of appearance of successor counsel, no motions are pending, and no trial date has been set. Mass. R. Civ. P. 11 (c). Where at least one of these conditions is not met, the decision whether to allow an attorney's withdrawal is left to the sound discretion of the judge and will be reversed only for an abuse of discretion. See *V.H.* v. *J.P.H.*, 62 Mass. App. Ct. 910, 911 (2004); *LoCicero* v. *Hartford Ins. Group*, 25 Mass. App. Ct. 339, 344 (1988).

As reflected in these two rules, an attorney may not terminate an agreement to represent a client simply because the attorney no longer wishes to continue the representation. See *Rusinow* v. *Kamara*, 920 F. Supp. 69, 72 (D.N.J. 1996) ("Sudden disenchantment with a client or a cause is no basis for withdrawal. Those who cannot live with risk, doubt and ingratitude should not be trial lawyers"). Even if an attorney has not entered an appearance on behalf of the client, the attorney may withdraw in accordance with rule 1.16 only if the withdrawal will not have a material adverse effect on the client's interests or if at least one of the circumstances requiring or permitting withdrawal is present. Cf. *Malonis* v. *Harrington*, 442 Mass. 692, 696 (2004), citing *Herbits* v. *Constitution Indem. Co.*, 279 Mass. 539, 542 (1932) (client has unquestioned right to discharge attorney, with or without cause).

Where, as here, the client enters into a representation agreement with a law firm rather than a sole practitioner, the law firm may not terminate the agreement simply because the attorney who had been handling the case has died, left the practice of law, or moved to a different firm. While the departure of the responsible attorney may cause the client to leave the firm, it may not cause the firm to leave the client if withdrawal will have a material adverse effect on the client's interests and none of the circumstances requiring or permitting withdrawal is present. See Mass. R. Prof. C. 1.16.

Because McGibbon was unable to retain successor counsel to prosecute his medical malpractice case, the Kiley firm's withdrawal would have had a material adverse effect on the client's interest in prevailing at trial or obtaining a reasonable settlement. Apart from conclusory assertions of "irreconcilable differences" with the client, neither Swift nor Kiley had identified any justification under rule 1.16 (b) or (c) to terminate representation when the judge issued his findings and order on June 16, 2010, directing Kiley to file an appearance on behalf of the client. While McGibbon was willing to discharge Swift in light of her intention to leave the practice of law, he wanted the Kiley firm to continue to represent him in the case. Kiley's letter to the client on June 21, 2010, in which he declared that his law firm was "unilaterally terminating" the agreement to represent the client in the medical malpractice case, effective immediately, demonstrates his apparent disregard of the dictates of rule 1.16 and rule 11 (c), as well as the judge's order, because it suggests that an attorney has the authority unilaterally to terminate an agreement to represent a client even where the attorney has filed a complaint on behalf of the client and entered an appearance in the case.

Even if there had been a permissible basis under rule 1.16 for the Kiley firm to move to withdraw from the case, the judge did not abuse his discretion by allowing Swift's motion to withdraw but requiring the Kiley firm to continue the representation and file an appearance. "[An] attorney who agrees to represent a client in a court proceeding assumes a responsibility to the court as well as to the client." *V.H.* v. *J.P.H.*, *supra*, quoting *Hammond* v. *T.J. Little & Co.*, 809 F. Supp. 156, 159 (D. Mass. 1992). In deciding whether to allow the withdrawal of an attorney or the attorney's law firm, a judge may consider the impact of a withdrawal on the timely and fair adjudication of the case and the "reasonable expectation of the opposing party to have a case efficiently adjudicated." *Zabin* v. *Picciotto*, 73 Mass. App. Ct. 141, 165 (2008). See *LoCicero* v. *Hartford Ins. Group*, *supra*. The judge noted in his findings that he had been informed by defense counsel that the dispute over McGibbon's representation had "severely retarded discovery progress" in the case, and that the case was already three years old and was

"falling behind" in its compliance with time standards. In view of all these circumstances, we conclude that the judge did not abuse his discretion in denying what was, in effect, the Kiley firm's motion to withdraw. It was reasonable to conclude that Swift's motion to withdraw should be allowed, because she was leaving the practice of law, but that the motion to withdraw should be denied to the extent it sought withdrawal of the Kiley firm from continued representation of the client in the case.

The judge also did not abuse his discretion in refusing to allow withdrawal of the Kiley firm after Kiley, in his motion to vacate or reconsider the June 16 findings and order, provided the judge with documents that McGibbon had sent to opposing counsel. These documents included an electronic mail message from Swift to McGibbon in which she offered the opinion that, even if he were to prevail on his negligence claim, a jury will award only "short cash."[5] The documents also included a letter from a plaintiff's attorney whom McGibbon approached in his attempt to find new counsel. The attorney described McGibbon's medical malpractice claim as "quite valid and meritorious" but declined to accept the representation because of the "damage aspects of this case." At least some of these documents had been provided to the judge on May 27 at the hearing on Swift's motion for reconsideration.[6]

Kiley contends that, as a result of the production of these documents to opposing counsel, continued representation "has been rendered unreasonably difficult by the client" and justified termination of the representation under rule 1.16 (b) (5). The judge did not address this issue in denying the motion for reconsideration, but the record provides ample basis for us to

---

[5]The electronic mail message also informed McGibbon: "You have every right to discharge me and ask the court to have Tom [Kiley] litigate this matter for you."

[6]The record does not include any explanation why McGibbon provided these documents to opposing counsel, and the judge made no findings as to McGibbon's purpose. We note that Swift stated in her affidavit that, at a hearing on May 27, 2010, McGibbon disclosed the contents of her earlier affidavit, which she contended had been "sealed" (although the docket includes no record of any impoundment) and the judge ordered her to send a copy of the affidavit to defense counsel. We note that McGibbon, with neither Swift nor Kiley advising him, may have understood that the judge wanted defense counsel to have copies of all documents provided to the judge at the hearing.

conclude that the denial of the motion was within his discretion. There is nothing in the record to suggest that McGibbon provided these documents to opposing counsel to sabotage his own case or otherwise acted in bad faith. Kiley cannot improperly abandon his client and then, when the client injures his position during settlement negotiations because the Kiley firm was no longer advising him, argue that the client's error now justifies his firm's withdrawal from the case. Moreover, even if McGibbon's conduct provided a ground for the Kiley firm to withdraw from the representation under rule 1.16 (b) (5), the judge did not abuse his discretion in refusing to release the Kiley firm from the representation where the case was already three years old, discovery was delayed, and no successor counsel could be found.

The judge erred, however, in requiring Kiley himself to file an appearance, because this part of his order rested on the erroneous finding that Kiley signed the representation agreement both as an individual and on behalf of the Kiley firm. The language of the agreement is clear that the agreement is between McGibbon and Kiley's law firm, not Kiley individually. The fact that Kiley did not specify that he signed the agreement on behalf of his firm rather than individually does not render ambiguous the clear language of the agreement. See Restatement (Third) of the Law Governing Lawyers § 14 comment h, at 132 (2000) (Restatement) ("When a client retains a lawyer with . . . affiliation [to a law firm], the lawyer's firm assumes the authority and responsibility of representing that client, unless the circumstances indicate otherwise").

When an attorney who is a partner, shareholder, or employee of a law firm enters an appearance in a civil case, the appearance binds both the individual attorney and that law firm to appear on behalf of the client. Where the attorney of record is unavailable, a judge, where necessary, may direct the law firm to send another attorney to cover an urgent matter in a case. Where an attorney leaves a law firm and moves to withdraw, and where successor counsel from another law firm does not file an appearance, a judge is entitled to expect that another attorney from the law firm will enter an appearance and continue to represent the client. In such circumstances, unless specified in the order, the allowance by a judge of a departing attorney's motion to withdraw does not also permit the law firm to withdraw

its representation in the case. A judge may allow the attorney's motion but require the law firm to select another attorney to enter an appearance and continue the representation. A judge may not, however, select the attorney in the law firm who will enter the appearance; the law firm may select the appropriate attorney.

On remand, the single justice is to affirm the judge's order only to the extent that it denies the Kiley law firm's motion to withdraw from the representation and requires another attorney affiliated with the Kiley firm to file an appearance on behalf of McGibbon. The single justice is to vacate the order to the extent that it orders Kiley himself to enter an appearance.

We address briefly the argument raised in one of the amicus briefs that motions to withdraw filed by attorneys who are retained on a contingency fee should be more generously allowed to prevent claims that are meritless from being brought to trial, "at no cost to the client, but at great cost to all others involved." Nothing in the record suggests that McGibbon's claim is without merit. A medical malpractice tribunal concluded that there was sufficient evidence to raise a legitimate question as to liability. The record suggests that the plaintiff attorneys who have examined McGibbon's case concluded that he may prevail on his negligence claim but should not expect a substantial damage award. Kiley has not claimed that, if his firm were to continue to represent McGibbon, he could not assert in good faith any of the elements of a medical malpractice claim: negligence, causation, and damages. Therefore, this is not a case where an attorney seeks to withdraw because his continued representation would risk a violation of Mass. R. Prof. C. 3.1, 426 Mass. 1381 (1998) (lawyer shall not file suit "or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous") or of the "attorney's oath" he took under G. L. c. 221, § 38, when admitted to the bar ("I will not wittingly or willingly promote or sue any false, groundless or unlawful suit, nor give aid or consent to the same").

Nor is this a case where the attorney seeks to withdraw because "the representation will result in an unreasonable financial burden on the lawyer." Mass. R. Prof. 1.16 (b) (5). Contrast *Smith* v. *R.J. Reynolds Tobacco Co.*, 267 N.J. Super. 62, 72 (App. Div. 1993) (law firm seeks withdrawal from contingent

fee representation of plaintiff lung cancer victim in case filed against tobacco manufacturer, where law firm claims amount of money spent and which must be expended to prosecute claim is financial burden "well above and beyond what was contemplated and what can be expected under the circumstances"). The Kiley firm has not argued that the cost of prosecuting McGibbon's claim is well above what it anticipated when it filed suit or that its continued representation will pose an undue financial burden on the law firm.

A law firm, after agreeing to represent a client for a contingent fee and filing a complaint that presumably complies with the requirement of a good faith basis under Mass. R. Civ. P. 11 (a) may not withdraw from a case simply because it recognizes belatedly that the case will not be profitable for the law firm. A lawyer's miscalculation of the time or resources necessary to represent a client, the likelihood of success, or the amount of damages "is usually a dubious ground" for withdrawal, because lawyers are better able than clients to forecast these matters. 1 G.C. Hazard, W.W. Hodes, & P.R. Jarvis, Law of Lawyering § 20.9, at 20-23 (3d ed. 2001 & Supp. 2005). See Restatement, *supra* at § 32 comment m, at 234-235. Attorneys who agree to represent clients on a contingent fee basis must choose their cases carefully, because the law does not allow them easily to jettison their mistakes, especially after the complaint has been filed. See *Haines* v. *Liggett Group, Inc.*, 814 F. Supp. 414, 424 (D.N.J. 1993), quoting *Kriegsman* v. *Kriegsman*, 150 N.J. Super. 474, 480 (App. Div. 1977) (once representation undertaken, "obligations do not evaporate because the case becomes more complicated or the work more arduous or the retainer not as profitable as first contemplated or imagined").

*Conclusion.* The case is remanded to the county court where the single justice will enter a judgment affirming the Superior Court judge's order to the extent that it denies the Kiley firm's motion to withdraw from the representation and requires another attorney affiliated with the Kiley firm to file an appearance on behalf of McGibbon, and vacating the order to the extent that it requires Kiley himself to enter an appearance.

*So ordered.*